UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DANIEL M. KALTMAYER,

    Plaintiff,

    v.

FRANK BOMMARITO BUICK GMC, INC.
d/b/a Bommarito Audi West County,

    Defendant.

Case No. 17-cv-1314-JPG-DGW

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) filed by defendant Frank Bommarito Buick GMC, Inc. d/b/a Bommarito Audi West County ("Bommarito") (Doc. 15). Bommarito argues that it is not subject to the Court's personal jurisdiction. Plaintiff Daniel M. Kaltmayer has responded to the motion (Doc. 27).

### I.    Background

Kaltmayer filed this lawsuit after he took his 2016 Audi to Bommarito, where he had purchased the car, to repair trim molding that had started to peel. Bommarito is incorporated in Delaware, but is located in Missouri. The day after Kaltmayer delivered the car to Bommarito in Missouri for the repair, it was involved in an accident while being driven by a Bommarito employee.

Kaltmayer filed this lawsuit in the Circuit Court for the Third Judicial District, Madison County, Illinois. In it, he alleges a claim for negligence (Count I) and conversion (Count II) of the 2016 Audi. After entering a limited appearance for the purpose of contesting personal jurisdiction, Bommarito removed the case to this Court pursuant to 28 U.S.C. § 1441(a) relying on

this Court's original diversity jurisdiction under 28 U.S.C. § 1332(a).

Bommarito filed the pending motion to dismiss pursuant to Rule 12(b)(2), arguing that it is not subject to the Court's personal jurisdiction because it does not do business in Illinois and all the acts alleged in the complaint occurred in Missouri. Kaltmayer does not dispute that Bommarito has no presence in Illinois and that the relevant events occurred in Missouri. He has provided evidence, however, that Bommarito placed advertisements in newspapers and on the internet that reached potential Illinois customers, that he purchased three vehicles from Bommarito over a four-year period, and that during that four-year period Bommarito repeatedly reached out to him in Illinois by phone and email to market its vehicles, including an individual email to him specifically marketing the 2016 Audi at issue in this case.

## II. Standard for Dismissal

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If there are material facts in dispute regarding the Court's jurisdiction over a defendant, the Court must hold an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.* (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Alternatively, the Court may decide the motion to dismiss without a hearing based on the submitted written materials so long as it resolves all factual disputes in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)). If the Court consults only the written materials, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Purdue Research*, 338 F.3d at 782 (citing *Hyatt*, 302 F.3d at 713).

Here, the Court decides the pending motion to dismiss based on the written materials, resolving any factual disputes in Kaltmayer's favor. It finds that Kaltmayer has made a *prima facie* showing of this Court's personal jurisdiction over Bommarito.

## III. Analysis

A federal court sitting in diversity looks to the personal jurisdiction law of the state in which the court sits to determine if it has jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)). Thus, this Court applies Illinois law. Under Illinois law, a court has personal jurisdiction over a defendant if an Illinois statute grants personal jurisdiction and if the exercise of personal jurisdiction is permissible under the Illinois and United States constitutions. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Wilson v. Humphreys (Cayman), Ltd.*, 916 F.2d 1239 (7th Cir. 1990).

### A. Illinois Statutory Law

Under Illinois law, the long-arm statute permits personal jurisdiction over a party to the extent allowed under the due process provisions of the Illinois and federal constitutions. 735 ILCS 5/2-209(c); *Hyatt*, 302 F.3d at 714; *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Therefore, whether the Court has jurisdiction over a defendant depends on whether such jurisdiction is permitted by federal and state constitutional standards.

### B. Illinois Constitutional Law

The Illinois Constitution's due process guarantee, Ill. Const. art. I, § 2, permits the assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident

3

defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990). When interpreting these principles, a court may look to the construction and application of the federal due process clause. *Id*. In fact, the Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction. *Hyatt*, 302 F.3d at 715 (citing *RAR,* 107 F.3d at 1276). The Court sees nothing in this case indicating that in this particular situation the federal and state standards should reach a different result. Therefore, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the Illinois long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

  C. <u>Federal Constitutional Law</u>

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations. *See Pennoyer v. Neff*, 95 U.S. 714, 733 (1878), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186 (1977). Under federal due process standards, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The defendant must have "purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S.

4

462, 474 (1985)).

What this standard means in a particular case depends on whether the plaintiff asserts "general" or "specific" jurisdiction. Specific, or case-linked, jurisdiction refers to jurisdiction over a defendant in a suit arising out of or in connection with the defendant's purposeful contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 9 (1984). General, or all-purpose, jurisdiction, on the other hand, may exist even in suits that do not arise out of or relate to the defendant's contacts so long as the defendant has "continuous and systematic" contacts with the forum state. *Goodyear*, 564 U.S. at 924; *Helicopteros Nacionales*, 466 U.S. at 416. No party in this case contends the Court has general jurisdiction over Bommarito; the sole issue is whether specific jurisdiction exists.

The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotations omitted). First, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *accord Goodyear*, 564 U.S. at 924. Purposeful availment can be established if the defendant purposefully exploited the forum state's market. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (defendant purposefully directed conduct at state when it exploited the forum state's market by regularly circulating magazines there). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475

5

(internal quotations and citations omitted). Second, the lawsuit must arise out of or be related to the defendant's contact with the forum. *Goodyear*, 564 U.S. at 923-24; *Helicopteros Nacionales*, 466 U.S. at 414 n. 8; *Keeton*, 465 U.S. at 774 (plaintiff's libel complaint arose out of the defendant's circulation of magazines containing the alleged libelous statements). When a defendant solicits business in the forum state, they become subject to that state's personal jurisdiction for claims arising from or related to those business activities. *See uBID, Inc. v. GoDaddy Grp.*, 623 F.3d 421, 430 (7th Cir. 2010) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007)).

Even if specific jurisdiction exists, the Court must still consider whether bringing the defendant into the forum court would offend traditional notions of fair play and substantial justice. Factor to consider in this inquiry include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotations omitted).

The Court believes it is fair to call Bommarito into court in Illinois for this case because of Bommarito's connections to Illinois and the relationship between those connections and this dispute. The Court notes that Bommarito's principle place of business is in the St. Louis metropolitan area, which spans the Mississippi River into Missouri and Illinois. The St. Louis metropolitan area contains over 2.8 million people, more than 600,000 of which live on the Illinois side of the Mississippi River in what is known as the Metro East. U.S. Census Bureau, American FactFinder, Annual Estimates of the Resident Population: April 1, 2010, to July 1, 2017,

https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk (visited Apr. 19, 2018) (entries for St. Louis, MO-IL Metro Area; Clinton, Jersey, Madison, Monroe, and St. Clair, Illinois, counties). Like many St. Louis area businesses, Bommarito advertises in publications that circulate on both sides of the river in order to convince people to cross the river to patronize businesses in the region but on the other side of the river. In choosing to advertise in publications that circulate on both sides of the river, Bommarito purposefully directed its business activities toward Illinois and deliberately tried to exploit the substantial market in the Metro East.

Its advertisements found a target in Kaltmayer, who lives in Madison County, Illinois, part of the Metro East. After selling Kaltmayer a car, Bommarito then maintained a four-year relationship with Kaltmayer during which they marketed by phone and email to him knowing he was an Illinois resident. It eventually individually targeted him by email to purchase the specific 2016 Audi involved in this case, which he did. It is reasonable to assume Kaltmayer's purchase of the 2016 Audi from Bommarito was the motivating factor in his taking it there for maintenance and repairs, and it is the care Bommarito took of Kaltmayer's car during one of these repair visits that directly led to the dispute in this case. Thus, it appears the Court has specific jurisdiction over Bommarito for the purposes of this case.

The additional factors do not counsel against exercising jurisdiction over Bommarito. It would not be a large burden for Bommarito to litigate in a judicial district adjoining its home district; Illinois has an interest in protecting its citizens who purchase items in response to out-of-state solicitations directed at them where those items are damaged due to the negligence of the seller; this Court is able to provide Kaltmayer convenient and effective relief; both parties can obtain an efficient resolution of their controversy in this forum; and advancing substantive social

7

policies is not a predominant concern of this litigation.

In light of the contacts between Bommarito, the Metro East, and the damage to Kaltmayer's 2016 Audi, the Court finds Kaltmayer has made a *prima facie* case that the Court has specific jurisdiction over this dispute and that exercising that personal jurisdiction over Bommarito would not offend traditional notions of fair play and substantial justice. Bommarito purposefully availed itself of the substantial Metro East market for vehicles, and those efforts led to a relationship with Kaltmayer, his purchase of the 2016 Audi, and the circumstances in which the car was damaged. It is fair, therefore, to expect Bommarito to answer Kaltmayer's allegations in this Court.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Bommarito's motion to dismiss for lack of personal jurisdiction (Doc. 15).

**IT IS SO ORDERED.**
**DATED: April 25, 2018**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
